# EXHIBIT A

SUPREME COURT
STATE OF NEW YORK   COUNTY OF ONONDAGA

DANA H. SIZING,

                                    Plaintiff,

         -against-                                      **SUMMONS**

ACUMEN DETECTION, LLC, An SRC                   **Index No.**
COMPANY; SRC, INC., TIMOTHY
MOSHIER, Individually and as former
President and Chief Strategic Officer of
ACUMEN DETECTION, LLC, An SRC
COMPANY; and CHARLES STORMON,
Individually and as former President of
ACUMEN DETECTION, LLC, An SRC
COMPANY,

                                    Defendants.

TO THE ABOVE-NAMED DEFENDANTS:

         **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action
and to serve a copy of your answer on Plaintiff's attorney(s) within 20 days after the
service of this Summons, exclusive of the day of service (or within 30 days after the
service is complete if the Summons is not personally delivered to you within the State
of New York); and in case of your failure to appear or answer, judgment will be taken
against you by default for the relief demanded in the Complaint.

         Plaintiff designates Onondaga County as the place of trial.

         The basis of venue is Plaintiff's place of residence.

Dated: April 14, 2021

{S1363413.1}                        1

SMITH, SOVIK, KENDRICK & SUGNET, P.C.

By: _____

    Steven Ward Williams, Esq.
    Karen G. Felter, Esq.
    *Attorneys for Plaintiff*
    250 South Clinton Street, Suite 600
    Syracuse, New York 13202
    Telephone: (315) 474-2911

TO:   ACUMEN DETECTION, LLC, An SRC COMPANY
       6225 Running Ridge Road
       North Syracuse, New York 13212

       SRC, INC.
       7502 Round Pond Road
       North Syracuse, New York 13212

       TIMOTHY MOSHIER
       676 Baldwin Road
       Fulton, New York  13069

       CHARLES STORMON
       1766 U.S. Route 20
       Cazenovia, New York  13035

{S1363413.1}            2

SUPREME COURT
STATE OF NEW YORK   COUNTY OF ONONDAGA

---

DANA H. SIZING,

                                 Plaintiff,

    -against-

ACUMEN DETECTION, LLC, An SRC
COMPANY; SRC, INC., TIMOTHY
MOSHIER, Individually and as former
President and Chief Strategic Officer of
ACUMEN DETECTION, LLC, An SRC
COMPANY; and CHARLES STORMON,
Individually and as former President of
ACUMEN DETECTION, LLC, An SRC
COMPANY,

                                Defendants.

**VERIFIED COMPLAINT**

**Index No.**

---

Plaintiff, **DANA H. SIZING**, by and through her attorneys, **SMITH, SOVIK,**

**KENDRICK & SUGNET, P.C.**, submits as and for a Complaint against

Defendants, **ACUMEN DETECTION, LLC, An SRC COMPANY; SRC, INC.;**

**TIMOTHY MOSHIER;** and **CHARLES STORMON**, as follows:

### INTRODUCTION

1.    This is a Complaint for injuries and harm caused by unlawful

discriminatory practices relating to employment because of age, gender

discrimination and harassment/retaliation in violation of Article 15 of the Executive

FILED: ONONDAGA COUNTY CLERK 04/14/2021 03:21 PM
NYSCEF DOC. NO.

Case 5:21-cv-00548-MAD-ML   Document 2   Filed 05/12/21   Page 5 of 27

INDEX NO. 003608/2021
RECEIVED NYSCEF: 04/14/2021

Law of the State of New York (Human Rights Law), Title VII of the Civil Rights Act (Title VII) and the Age Discrimination in Employment Act (ADEA)

2.      Section 296 of the Human Rights Law of the State of New York, (HRL) and its various subsections make it an unlawful discriminatory practice for an employer or labor organization because of the sex or age of any individual to discriminate against such person in the hiring and/or in compensation, or in terms conditions or privileges of employment or for an employer or labor organization to retaliate against any person who files a complaint, provides testimony and/or directly or indirectly assists with the maintenance of a complaint of employment discrimination or for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden by Article 15 of the New York Executive Law. This action is also maintained pursuant to Section 291 of the HRL which guarantees the civil right of each citizen to equal employment opportunities.  Plaintiff also sues under Title VII and the ADEA and New York State tort law.

## JURISDICTION AND VENUE

3.      Jurisdiction of this court is invoked pursuant to Section 297(a) of the HRL which provides that any person claiming to be aggrieved by an unlawful discriminatory practice in employment shall have a cause of action for damages and such other relief as may be appropriate.

4.      This Court has personal jurisdiction over the defendants pursuant to CPLR § 301 and 302.

{S1361927.1}

2

5.      Venue lies in the Supreme Court for the State of New York, Onondaga County under CPLR § 503 (a) as at least one of the parties resides in Onondaga County.

## PARTIES

6.      Plaintiff is and was at all times hereinafter relevant, was a resident of the County of Onondaga, State of New York.

7.      At all relevant times herein, Plaintiff was employed by Acumen Detection, LLC, an SRC Company (hereinafter "Acumen") and/or SRC, Inc.

8.      Upon information and belief, defendant Acumen, was at all relevant times, an integrated and wholly owned investment operation and subsidiary of defendant SRC located at 6225 Running Ridge Road, North Syracuse, New York 13212.

9.      Upon information and belief, SRC is and was at all relevant times, a domestic corporation organized under the laws of the State of New York located at 7502 Round Pond Road, North Syracuse, New York 13212.

10.      Acumen and/or SRC were Plaintiff's employer within the meaning of the New York Human Rights Law (HRL), Civil Rights Law, State Constitutions, Title VII and the ADEA. Upon information and belief, defendant Timothy Moshier was at all relevant times the President, employee and/or agent of Acumen.

11.      Upon information and belief, Timothy Moshier, is a resident of the County of Onondaga, State of New York.

{S1361927.1}

3

12.     Upon information and belief, defendant Timothy Moshier was at all relevant times the President or Chief Strategy Officer and employee and/or agent of Acumen.

13.     Upon information and belief, Charles Stormon, is a resident of the County of Onondaga, State of New York.

14.     Upon information and belief, defendant Charles Stormon was at all relevant times the President and employee and/or agent of Acumen.

15.     Defendants at all times herein relevant were entities who employed plaintiff within the meaning of the Executive Law of the State of New York (Human Rights Law).

16.     Upon information and belief,  defendants Timothy Moshier and Charles Stormon at all times herein relevant were acting within the scope of their employment with Acumen and/or SRC as supervisors within the meaning of the HRL.

## CONDITION PRECEDENT

17.     On or about June 12, 2019, Plaintiff filed a Federal Charge with the United States Equal Employment Opportunity Commission ("EEOC").

18.     On or about January 14, 2021, Plaintiff received a Notice of Right to Sue from the EEOC, a copy of which is attached as Exhibit "A".

19.     All conditions precedent to the bringing of this action against Defendants have now been satisfied.

{S1361927.1}                                     4

Case 5:21-cv-00548-MAD-ML   Document 2   Filed 05/12/21   Page 8 of 27

## FACTUAL ALLEGATIONS

20.     Plaintiff is a 52-year-old white female, born on ▮▮▮▮▮▮▮▮, who was hired in February 2016 by Acumen as the Director of Business Development.

21.     Plaintiff was the only female executive at Acumen, a start-up company specializing in the sales of Acu-Polaris, an on-farm lab system that allowed dairy producers to test for mastitis-causing pathogens.  At the time she was hired, Plaintiff was a commercial business professional with a solid history of success in the life sciences and health industry.  Plaintiff had a record of proven success in sales, marketing, training and business development and demonstrable knowledge in consumables, services, and capital equipment.

22.      Upon information and belief, SRC and Acumen shared management services such as preparation of policy manuals, payroll, insurance, benefit and employee incentive programs.

23.     Upon information and belief, SRC and Acumen also shared a personnel (human resources) department, and legal department.  Both companies shared a centralized source for employment and promotion decisions.  Upon information and belief, SRC exercised complete financial control over Acumen and its Boards of Directors.

24.     In October 2016, Plaintiff received an excellent performance review from Acumen President, defendant Timothy Moshier, and a 3.5% salary increase.

{S1361927.1}                                    5

25.     In December 2016, Acumen hired a Director of Sales, who reported to Plaintiff.  In the Spring 2017, Acumen hired three field Sales Representatives who reported to the Director of Sales under Plaintiff.

26.     In August 2017, Acumen sold its first Acu-Polaris system.

27.     In October 2017, Plaintiff received another positive performance review from Moshier.

28.     Plaintiff and the female Director of Sales continually advised Moshier that his original sales forecasts of the Acu-Polaris system reported to the Board of Acumen, controlled by SRC, were too high even assuming good sales and product performance.  In late Fall 2017, Acumen was having trouble with the technology of the Acu-Polaris system and sales were not as Moshier had forecasted to the Board. Moshier began looking for scapegoats at Acumen when he came under pressure from the Board to deliver on his wildly unrealistic sales forecasts.

29.     Throughout his tenure as President, Moshier continually subjected Plaintiff and other female employees and managers at Acumen to sexual harassment and a hostile work environment.

30.     Throughout the late Fall 2017, Moshier consistently excluded Plaintiff as well as the female Director of Sales and Research and Development Manager from budget meetings.  The budget for Plaintiff's department was reduced twice without her knowledge or input.

{S1361927.1}

6

31.    When excluding Plaintiff and other female directors and managers from meetings, Moshier sent emails to male invitees to meet in the conference room rather than in his office so as to be "less conspicuous" than his office.

32.    When Moshier did conduct meetings in the presence of Plaintiff and other female directors and managers, he and other males frequently used profane language as well as sexist and demeaning language to refer to other women within and without the company.   For example, Moshier referred to an SRC employee as a "cocksucker" in a meeting where Plaintiff and others were present and used the word "fuck," "fuckers" and "asshole" frequently when conducting manager meetings. Moshier verbally attacked SRC's female Human Resources representative with profanities in an "all hands" meeting which caused her to abruptly leave.  Moshier also referred to female contractors hired to assist at trade shows for the company as "booth babes." Moshier also often referred to an employee in Acumen's IT department as a "bitch" because she asked him to be compliant with computer coding requirements.

33.    Moshier continually interfered with the ability of Plaintiff and others to improve communications with customers regarding technical difficulties with the Acu-Polaris system to facilitate sales and marketing of the product to customers.

34.    Even after Plaintiff engaged in specialized education and training to become an export consultant, Moshier failed to invite her to travel with him as a company representative to a new market in New Zealand where her specialized

{S1361927.1}                                7

education and training as an export consultant could have been used to sell and market Acumen's product at a critical time for the sales and marketing needs of the company. Instead of including Plaintiff on this critical trip, Moshier invited the company comptroller, a male, who had no experience in sales, marketing or exports.

35. Moshier continually undermined Plaintiff's attempts to obtain planned revenue on behalf of the company with a specific business plan and approach. In email communications with an outside sales representative who reported to her, Plaintiff authorized and approved reduced pricing for the Acu-Polaris system on the condition of a monthly standing order; Moshier later advised that he approved the reduced price without her knowledge and without the condition of the standing order. Moshier then chastised Plaintiff when sales numbers were not as high as the forecasts he made to the company's Board.

36. If Plaintiff or a female director or manager made a suggestion or statement to Moshier regarding ways to improve sales or team efficiency, it would be ignored. If a male manager made the same suggestion or statement, Moshier would acknowledge it. If Plaintiff or a female director or manager challenged Moshier in a mangers' meeting, he would become defensive and combative, which did not happen with male managers. Moshier "micro-managed" Plaintiff and the female directors and managers while letting male managers freely do their jobs.

{S1361927.1}

8

Case 5:21-cv-00548-MAD-ML   Document 2   Filed 05/12/21   Page 12 of 27

37.    The female Director of Sales ultimately resigned in December 2017, after Moshier continually interfered with Plaintiff's team and refused to accept input from any female executive, director, manager or team member.

38.    In January 2018, Plaintiff spoke with SRC's Human Resources representative about the harassing and hostile environment at Acumen created and fostered by Moshier.  Plaintiff explained her fear of retaliation if she made a formal complaint.  Plaintiff was advised to speak to SRC's CFO about her concerns regarding Moshier as well as her fears of retaliation.  Later, Plaintiff met with the CFO of SRC to explain Moshier's mismanagement of Acumen and his gender discrimination and sexual harassment of employees and/or the hostile work environment Moshier created at Acumen.

39.    In March 2018, Plaintiff was invited by SRC's Human Resources and Legal Departments to talk about her experiences and complaints since working at Acumen.

40.    In April 2018, Plaintiff along with several other women at Acumen spoke with two representatives of SRC's Human Resources Department as well as an officer in SRC's Legal Department about the toxic, hostile, demeaning, sexist and/or harassing environment created and fostered by Moshier.  Plaintiff was promised there would be no retaliation upon her sharing her concerns and complaints about the unwelcome and hostile environment at the company.

{S1361927.1}

9

Case 5:21-cv-00548-MAD-ML   Document 2   Filed 05/12/21   Page 13 of 27

41.     Thereafter, it was clear to Plaintiff that Moshier was aware of her complaints because his hostility and harassment increased.

42.     Upon information and belief, the complaints that Plaintiff and the other female employees made to SRC's Human Resources and Legal Department were investigated by an outside law firm.  Although Plaintiff was told there was no evidence to support her claims of sexism, she was advised "big changes" were coming to the workplace.

43.     In May 2018, Moshier was removed physically from Acumen's building in the SRC campus and a new President, defendant Charles "Chuck" Stormon, was brought in to run the company.  However, Moshier remained involved in the management of Acumen as Chief Strategic Officer and upon information and belief, made disparaging statements about Plaintiff to the new company President.

44.     Throughout his tenure as President, Moshier subjected Plaintiff to sexual harassment, a hostile work environment and discrimination based on her age.

45.     After Plaintiff reported Moshier's harassing conduct, defendants took formal retaliatory action against her.  In August 2018, with no notice, warning or justification, Plaintiff was placed on a Performance Improvement Program ("PIP") by Storman and defendants.

46.     In September 2018, Stormon retained professional leadership coaches as part of Acumen's "High Potentials" program to work with him and Moshier who was still employed as Chief Strategist for Acumen, although Moshier was not allowed

{S1361927.1}                                    10

to have any direct physical or reporting supervisory responsibilities over Acumen employees.

47.    Stormon also provided or offered professional coaching services to all other directors and managers at Acumen with the exception of Plaintiff who was at that time on an unjustified, unwarranted PIP and purportedly in need of professional improvement and training.   When Plaintiff asked for the opportunity to receive professional coaching services, Stormon said it was too expensive.  The other female directors, managers and sales representatives at Acumen who were provided or offered professional coaching services were younger than Plaintiff.

48.    In October 2018, with no notice, warning or justification, Plaintiff's title, rank and pay were altered, reduced and/or lowered by Storman and defendants.

49.    In November 2018, Stormon told Plaintiff he was surprised she had "stuck it out" and not quit after being placed on the PIP.  Stormon made demeaning and harassing comments to Plaintiff based on her sex.  Specifically, he said he was in a "conundrum;" that he "wanted to fire" her, but was concerned about how that "would look" to the "rest of the females" because she was the "only female executive." Stormon referred to himself, Moshier, the male Sales Director and male Comptroller as the "four old white privileged guys."

50.    In December 2018, Plaintiff was removed from the unjustified, unwarranted PIP.  During this meeting, Stormon insulted and demeaned Plaintiff by

telling her she no longer had to worry about reporting to "Daddy," referring to Moshier.

51.    In February 2019, Plaintiff learned SRC would stop funding Acumen as of mid-March 2019. Most Acumen employees applied for jobs with SRC. Plaintiff applied for several positions at SRC, but was told she lacked prior government contract experience. A number of other male Acumen employees who likewise lacked required or preferred experience were nevertheless hired at SRC.

52.    SRC did not hire Plaintiff or any of the other women who complained to SRC's Human Resources and Legal Departments about Acumen President Timothy Moshier.

53.    In March 2019, Storman told Plaintiff she was not well liked at SRC and she should look for a job outside the company. Upon information and belief, Storman and/or Moshier attempted to or did interfere with Plaintiff's attempt to find employment outside SRC through contacts at Acumen/SRC.

54.    On March 15, 2019, Plaintiff's employment with Acumen was terminated based purportedly on a reduction in force, which was a pretense for retaliatory discharge and age discrimination by defendants.

55.    Defendants caused Plaintiff economic damage, mental, physical, and emotional pain and suffering by intentionally discriminating against Plaintiff based on her age and gender, retaliating against Plaintiff because of her complaints of gender discrimination, sexual harassment and/or hostile work environment, failing

{S1361927.1}                                          12

to offer her employment or benefits of employment and because of her age and gender and/or complaints of gender discrimination, sexual harassment and/or hostile work environment.

## AS AND FOR A FIRST CLAIM AGAINST DEFENDANTS
## (SEXUAL HARASSMENT UNDER HRL AND TITLE VII)

56. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "55" of the Verified Complaint as is if fully set forth herein.

57. The discrimination and unlawful conduct complained of herein began in November 2017, and continued until March 15, 2019, when, after Acumen ceased doing business, Plaintiff was refused employment by SRC after reporting incidents of sexual harassment and hostile work environment.

58. The harassment was perpetrated by Defendants Moshier and Storman.

59. The conduct and communications of defendants Moshier and Storman substantially interfered with the employment of Plaintiff and created an intimidating, hostile and offensive work environment in violation of the HRL and Title VII of the Civil Rights Act of 1964.

60. Both Moshier and Storman were, at all relevant times, employed as a supervisor of Plaintiff as defined by courts of New York State, making defendants Acumen and/or SRC strictly liable for Moshier's conduct.

61. As a result of harassment by Moshier and Storman, Plaintiff was subject to a hostile and abusive work environment.

62.     Moshier's conduct was reported by Plaintiff to two representatives of SRC's Human Resources Department as well as an officer in SRC's Legal Department.

63.     Defendants Acumen and/or SRC knew or should have known of Moshier's conduct and communications and should have taken timely and appropriate action.

64.     Instead of taking action to end discrimination and harassment of Plaintiff, defendants Acumen and/or SRC installed defendant Stormon as President and Plaintiff's new supervisor who continued and perpetuated the conditions of harassment, hostile work environment and retaliation.

65.     As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in physical illness and emotional stress.

66.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered economic loss, extreme mental anguish, outrage, severe anxiety, reduced ability to support herself, harm to her employability and earning capacity, painful embarrassment among her friends and coworkers, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life and she will continue to suffer such damages in the future.

{S1361927.1}                                    14

67.     As a result of defendants' violation of the HRL and Title VII, Plaintiff has been damaged in the sum to be determined by a court of law.

### AS AND FOR A SECOND CLAIM AGAINST DEFENDANTS
**(RETALIATION UNDER HRL AND TITLE VII)**

68.     Plaintiff repeats the allegations contained in paragraphs "1" through "67" with the same force and effect as if fully set forth herein.

69.     Plaintiff engaged in a protected activity by making complaints of sexual harassment and hostile work environment to two representatives of SRC's Human Resources Department as well as an officer in SRC's Legal Department.

70.     As a result of Plaintiff's complaints of sexual harassment and assault, she was subject to adverse employment action by defendants, including, but not limited to: 1) in August 2018, with no notice, warning or justification, Plaintiff was placed on an unwarranted a Performance Improvement Program ("PIP") by defendants; 2) in October 2018, with no notice, warning or justification, Plaintiff's title, rank and pay were altered, reduced and/or lowered by defendants; and 3) refusing to hire Plaintiff or any of the other women who complained to SRC's Human Resources and Legal Departments about Acumen President Timothy Moshier for positions at SRC after Acumen ceased doing business.

71.     As a further direct and proximate result of defendants' violations of the HRL and Title VII, Plaintiff has suffered economic loss, extreme mental anguish, outrage, severe anxiety, reduced ability to support herself, harm to her employability and earning capacity, painful embarrassment among her friends and coworkers,

{S1361927.1}                                    15

damage to her good reputation, disruption of her personal life, and loss of enjoyment

of the ordinary pleasures of everyday life and she will continue to suffer such damages

in the future.

72.    As a result of defendants' violation of the HRL and Title VII, Plaintiff

has been damaged in the sum to be determined by a court of law.

## AS AND FOR A THIRD CLAIM AGAINST DEFENDANTS
### (AGE DISCRIMINATION UNDER HRL AND ADEA)

73.    Plaintiff repeats the allegations contained in paragraphs "1" through

"72" with the same force and effect as if fully set forth herein.

74.    Defendants' actions and/or omissions were based in whole or part on

Plaintiff's age and/or her protected activity and thus violate Plaintiff's rights under

the ADEA.

75.    Specifically, Defendants discriminated and retaliated against Plaintiff

on the basis of her age, gender, and/or protected activity by engaging the foregoing

conduct.

76.    As a direct and proximate result of defendants' violations of the HRL

and the ADEA, Plaintiff has suffered economic loss, extreme mental anguish,

outrage, severe anxiety, reduced ability to herself, harm to her employability and

earning capacity, painful embarrassment among her friends and coworkers, damage

to her good reputation, disruption of her personal life, and loss of enjoyment of the

ordinary pleasures of everyday life and she will continue to suffer such damages in

the future.

{S1361927.1}                                    16

77.     As a result of defendants' violation of the HRL and the ADEA, Plaintiff has been damaged in the sum to be determined by a court of law.

## AS AND FOR A FOURTH CLAIM AGAINST DEFENDANTS TIMOTHY MOSHIER AND CHARLES STORMON (AIDING AND ABETTING UNDER HRL)

78.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "77" with the same force and effect as if fully set forth herein.

79.     At all relevant times herein, defendants Timothy Moshier and Charles Stormon acted as Plaintiff's supervisors and President of Acumen.

80.     Defendants Timothy Moshier and Charles Stormon, who actually participated in, committed and/or condoned the sexual harassment and/or retaliation of Plaintiff may be held individually liable for the discriminatory actions that damaged the Plaintiff.

81.     As a result of defendants' violations of the HRL, Plaintiff has suffered economic damages and past and future mental anguish and distress.

82.     As a direct and proximate result of violations of the HRL by defendants Timothy Moshier and Charles Stormon, Plaintiff has suffered economic loss, extreme mental anguish, outrage, severe anxiety, reduced ability to support herself, harm to her employability and earning capacity, painful embarrassment among her friends and coworkers, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life and she will continue to suffer such damages in the future.

{S1361927.1}                              17

83.    As a result of violations of the HRL by defendants Timothy Moshier and Charles Stormon, Plaintiff has been damaged in the sum to be determined by a court of law.

## AS AND FOR A FIFTH CLAIM AGAINST DEFENDANTS
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

84.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "83" with the same force and effect as if fully set forth herein.

85.    By the actions described above, Defendants engaged in extreme and outrageous conduct, which intentionally caused severe emotional distress to Plaintiff.

86.    Defendants intended to cause, or disregarded the substantial probability of causing, severe emotional distress upon the Plaintiff.

87.    As a direct and proximate result of the intentional/reckless acts and conduct of the defendants, Plaintiff has suffered economic loss, extreme mental anguish, outrage, severe anxiety, reduced ability to support herself, harm to her employability and earning capacity, painful embarrassment among her friends and coworkers, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life and she will continue to suffer such damages in the future.

88.    As a result of the intentional/reckless acts and conduct of the defendants, Plaintiff has been damaged in the sum to be determined by a court of law.

{S1361927.1}

18

## AS AND FOR A SIXTH CLAIM AGAINST DEFENDANTS
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

89.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "88" with the same force and effect as if fully set forth herein.

90.     The negligent conduct of the Defendants as described above is, and was, outrageous and far beyond the norms of civilized and professional conduct.

91.     As a direct and proximate result of the defendants' negligence, Plaintiff has suffered economic loss, extreme mental anguish, outrage, severe anxiety, reduced ability to support herself, harm to her employability and earning capacity, painful embarrassment among her friends and coworkers, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life and she will continue to suffer such damages in the future.

92.     As a result of the negligence of the defendants, Plaintiff has been damaged in the sum to be determined by a court of law.

### DEMAND FOR JURY TRIAL

93.     Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff, Dana H. Sizing, respectfully requests: (1) a declaration that Defendants violated New York State Executive Law § 296 and Title VII of the Civil Rights Act; (2) Defendants, their agents, employees, officers, and successors in interest, and those acting in concert with Defendants, be permanently enjoined from engaging in the future in the wrongful practices alleged herein; (3) an award of damages in an amount to be determined at trial, to compensate Plaintiff for

{S1361927.1}                                    19

mental anguish, humiliation, embarrassment, emotional injury and lost wages; (4)

Defendants be ordered to pay the costs and disbursements of this action, including

attorney's fees; (5) punitive damages; and (6) such other and future relief as this court

deems proper.

DATED:      April 14, 2021

                            **SMITH, SOVIK, KENDRICK & SUGNET, P.C.**

                            By: _____
                                  Steven W. Williams, Esq.
                                  Karen G. Felter, Esq.
                                  *Attorneys for Plaintiff Dana H. Sizing*
                                  250 South Clinton Street, Suite 600
                                  Syracuse, New York 13202
                                  Telephone: (315) 474-2911

## VERIFICATION

DANA H. SIZING, being duly sworn, deposes and says:

I am the named Plaintiff in the above-entitled Complaint.  I have read the foregoing Complaint and know the contents to be true to my own knowledge, except as to the matters therein stated to be upon information and belief, and as to those matters, I believe them to be true.

Dated:      Syracuse, NY
             April 13, 2021

                            Dana H. Sizing

Sworn to before me this
13th day of April, 2021

Notary Public

Karen G. Felter
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02FE6275160
Qualified in Onondaga County
Commission Expires January 14, 2017

{S1361927.1}

# EXHIBIT A

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: **Dana Sizing**<br>**4548 Ashfield Terrace**<br>**Syracuse, NY 13215** | From: **Newark Area Office**<br>**283-299 Market Street**<br>**Two Gateway Center, Suite 1703**<br>**Newark, NJ 07102** |
|---|---|

| [ ] | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **525-2019-01064** | **Alvin L. Mallette,**<br>**Supervisory Investigator** | **(973) 645-5975** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed** <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

JOHN WALDINGER *Digitally signed by JOHN WALDINGER...*     January 11, 2021

Enclosures(s)

**John Waldinger,**
**Area Office Director**

*(Date Issued)*

cc:   **Director**
**Human Resources**
**ACUMEN DETECTION, LLC**
**6225 Running Ridge Road**
**N Syracuse, NY 13212**

**Karen Felter, Esq.**
**SMITH & SOVIK, P.C.**
**250 South Clinton Street, Suite 600**
**Syracuse, NY 13202**

**Adam Mastroleo, Esq.**
**BOND, SCHOENECK & KING, PLLC**
**One Lincoln Center**
**Syracuse, NY 13202**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*